Thanks. We move to the second case this morning, Federated Mutual Insurance v. Coyle Mechanics. Mr. Davis, you may proceed. Yes, Your Honor. Good morning, panel. I appreciate the opportunity to bring this oral argument to you today, and may it please the court and counsel for Federated. We confront today a recurring problem in Illinois insurance law governing an insurer's duty to defend under commercial general liability policy. This is a defense cost case, although the district court jumped to a final judgment on any duty to defend here under this commercial general liability policy is the main topic, and the black letter principles are really not really in dispute between the parties here. They're set out well in the briefs. It is clear, however, that this will involve necessarily substantial factual determinations, and the potential for coverage is the core principle. That is potential for coverage. An insurer may not refuse to defend an action unless it's clear from the face of the complaint that the allegations failed to bring a case within, or potentially within, the policy's coverage. The insurer may offer extrinsic evidence beyond the four corners of the complaint, which is part of the main dispute here. Any vague or ambiguous allegations are construed in favor of a finding of the duty to defend. So there are many, in our view, there of the motion for judgment on the pleadings, even based on the complaint itself. Was there a property damage? Was there an occurrence? Can we fairly conclude that Prairie's claim is solely for repair and replacement, and no set of circumstances could be shown it as otherwise? Taking into account the language of the complaint itself that the damages asserted in the case were replacement damages. But with all the cases cited by both parties, there is no clear, direct controlling authority, either under the Illinois case law or the Certix case law. There are many factual settings and variations as you get into these cases, and in fact, most are summary judgment cases based on a developed record. The problem in this case came with the rush to judgment via the Rule 12 judgment on the pleadings. Not saying that Rule 12 didn't apply. There had been an answer filed. But Rule 12c clearly deals with questions of law. It is not a means to dispose of cases where there are disputed facts that are relevant, or as is more properly done on a full record for a summary judgment or trial. Mr. Davis, what's the status of discovery in the underlying action with Prairie? Is that completed at this point? It is not. We are heavily engaged in depositions at this time. Coyle was just deposed a week ago, and the corporate representative of Prairie States was deposed several weeks ago, and we submitted a piece of that testimony to the court. And in this case, would you seek more discovery on the loss of use claim if it's sent back to the district court, or has discovery proceeded enough in the underlying action that that wouldn't be necessary? I think discovery would be helpful in that regard. I think what we submitted by way of our supplemental evidence from the admission of the counsel for Prairie States that other property had been damaged is sufficient. I think also that, you know, we have described in detail in our pleadings loss of use, that, you know, a defective product allegedly put into an integrated system, in this case, a power plant, which leads to a conclusion there can be coverage under a property damage. We find ourselves at the mercy of the pleader, as they said here today, and we're unable to go beyond much that is developed in the record to this point. The district court declined to accept anything we offered by way of supplemental evidence that we had or could obtain prior to the ruling, although the ruling was a year after the filing of the motion. And the trial court or the district court here selectively looked at that extrinsic evidence. It did not look at our evidence on the direct admission there was damage to other property. But did take Prairie State's counsel statement that the utility was not seeking loss of use of the power plant as an ineluctable, constant conclusion to the entire case. It couldn't be changed. Mr. Davis, one of the categories of covered damages is personal and advertising injuries. What's the basis in either the complaint or discovery for you to conclude that Prairie is seeking that kind of damage? That seems very different from the property damage or loss of use damage and a bit of a stretch. It is. I'm not going to disagree with your honor. When you're in the position we're in, you raise whatever issues you can't possibly raise to try and draw coverage. In this instance, advertising injury was this. The advertising an issue worth multiple pieces of information from the manufacturer's website, a brochure from the manufacturer that's publicly disseminated. All this information was part of what was provided to Prairie States together with a suggestion of what valve might be appropriate. And so our use of this advertising, it is really the related to someone else's advertising that we think is the connector here. It's not the defamation aspect. We'll concede that it's not anything but our use of the advertising of Copeland to present this product, which is relevant to the breach of warranty claim. There were claims of breach of warranty, and this would be significant evidence in that regard. And so that is the substance of that claim for better or for worse. But if I might, your honors, as I indicated, the time for determination of the motion for judgment on the pleadings is at the time it is filed. And there was not a single interrogatory document request at that time. And we faced a combination of a motion to stay discovery while that motion for judgment on the pleadings occurred. And I don't think this is anything sinister, but it is a crafty way to block an insured where I'm showing there's this potential for coverage. And so years after the motion, as I said, the court selectively looked at extrinsic evidence and in favor of the insurer, not the insured, contrary to the standards. This is a very important case for oil supply. It, you know, it finds itself unlike all most virtually all the other cases we have cited to the court. Coil is an intermediary. It is not the manufacturer of these heavy industrial valves. It is not an engineering firm. It is unable to know precisely what all the precise operations of these valves are. And we're dealing with enormous valve trains being installed in a power plant. These involve significant other property. Say that again. We're dealing with what valve trains where a series of valves are put on a heavy pipe, 3,000 pounds of pipe, and they are dropped into or lifted up to a place in the power plant for installation. Even if we look at this as a removal of the valves that might be defective, there will be harm to these heavy valve trains and these pipes. This is not some simple, we can disconnect the valve and replace it with something else. Mr. Davis, let me ask you a question on that point, and I'm grateful that you're making it. One of the things in preparing for the case that I noticed that neither party is talking about, and perhaps for good reason, perhaps my focus on it is misdirected, and that's the exclusions. In the policy, you have it there? You have the policy? I do. Okay. On page 12 of 21, there's an exclusion for damage to impaired property or property not physically injured. It looks like it carves out property damage that arises out of a defective product. My only question is, in looking at this case and the record, should we focus at all on the exclusions? And if not, why not? The main reason not to is because that issue was never raised or considered by the district court. At least, it's not part of the district court's opinion. The district court issued a short opinion, and I know that's part of the back and forth in the but as we consider the matter, what I'm worried about is that I look at half the policy, but not the back half of the policy. Well, the exclusion for that, in my view of the situation, is it still does not exclude damage to other property. It does not exclude damage to other property. So long as it's disconnected, so long as it's not caused by a defect. In other words, is your point, and I thought this might be your response, is your point that we still have, at a minimum, based upon the extrinsic evidence, in particular the statement made by attorney, what is it, Barrett? Barron. Barron at that hearing, that we got a fat question. Indeed. Indeed, and it's, again, it's 3,000 pounds of heavy type, and that type is, you know, it's not a defect in the valve, but the valve is leaking that causes that damage, but nor is it rip and tear. Nobody, we don't know that. I mean, we don't know. I mean, I don't have any idea, and your point is that it should be factually explored, right? We can't make that finding on appeal. I think there is an ability to draw reasonable inferences in our favor based on what's in the findings supported by evidence. I would agree with you, and that is part of the reason why we're dealing with, you know, in our view, what we were talking about is not the kind of hypothetical speculation that federated refers to. We have not submitted anything to the district court or to this panel that is inconsistent with the pleading. The pleading did not exclude other forms of damage. The pleading, you know, may have, you know, they may have later attempted to say, well, we're not pursuing some, you know, other losses, but that's an incomplete answer to the situation. The idea that there has been an occurrence here is to be assessed as from the insured standpoint, not from the insurer's standpoint. It requires construing a complaint that is silent against the insured to find no occurrence here. So in other words, for them to find that there is no occurrence or to argue there's no occurrence or physical facts here, you have to construe this complaint such as it is against the insured and support the exclusion of the evidence that we offered in our supplemental filings. I see I have two minutes and change left before my time is up. I had reserved five minutes, so I may stop here unless you have other questions at this point. Thank you, counsel. Ms. Berger? Good morning, your honors. May it please the court. You've asked about the exclusions in the policy, so I'll just address that first. Yes, we did raise those in the complaint. They were not the subject of the motion for summary judgment was really based upon the no coverage within the scope. You mean motion for judgment on the pleadings, right? There wasn't a summary judgment motion for judgment. Sorry, judgment on the pleadings, but it was judgment on the pleadings based upon the scope of coverage. We did not go. We did not raise the exclusions in that motion because we, you know, you know, apply here to your product and arising out of it, but that's not was not the subject of the motion for judgment on the pleadings. We focus more really on the no occurrence issue here. No, you know, no property damage for the property alleged. Things got kind of haywire based upon, you know, all the various different side shows that were raised, you know, for lack of a better term by the defendant in the underlying motion for judgment on the pleadings. Ms. Berger, you seem to almost concede that the district court erred in granting the motions to strike that the wrong standard was used. Is that a fair reading of your response brief here? You know, I don't know that I would say that the wrong standard was used. The court maybe used language from that section 7.1, which definitely applies to supplemental briefing. So I would say that, you know, the court used the exceptional circumstances that apply to reply, not to supplemental. And I do. Yes. And I do agree that the wording that wording was used, but it was certainly within the court's discretion to not consider those reply briefs. And I would, you know, add on those that, you know, neither of the briefs met the standard, which would be a change in law or facts, which occurred after the filing of the brief. The first brief sought to submit attorney argument and called it evidence. You know, it's universally known that statements of attorneys are not in fact evidence. And even if the statement could be considered, it was really just a bear of vermin. It was not based on, you know, necessary personal knowledge. There was no affidavit. There was no district court here did rely on the statement of the attorney and all that particular aspect of the motion to supplement sought to do was to make sure the court saw both sides. So you're absolutely right. Attorney statements generally aren't evidence, but here the district court used that attorney statement as evidence, but didn't give coil the opportunity to provide the full picture. And, and I really, I have to respectfully say that I don't read the court's motion, memorandum on the motion for judgment on the pleadings to rely on the attorney statement. Um, the, the court's opinion, um, found that in its opinion coils argument that there is an implication that Prairie's power plant was not operating at its full capacity and that such constitutes a claim for loss of tangible property just was unpersuasive. The court really just didn't buy that argument. It only noted that Prairie's council did not agree with that category of claim damages. But if you look at the underlying complaint, if you go to the underlying complaint and look at it, there are no facts to support the concept that Prairie seeks diminished capacity of its plant. All the court was saying was they're all, let's go back to the, the point you made about the district court's lack of reliance upon the statement made at the hearing. When I look at page appendix, page 14, page six of nine of the court's order, it seems pretty plain at the top that the court is relying upon the statement that Prairie count Prairie's council made in not making a claim for loss of And that, that reference just necessarily has to be to the, the statement that Ms. Barron made in that hearing. And I think Mr. Davis's point is that if that's going to be considered, well, Ms. Barron is playing his day as an officer of the court represented that intersecting pipes were damaged. Now, Ms. Barron is not the plant engineer, et cetera, et cetera. So the evidentiary point is simple that way. I totally get that. But I think his, the point that they're making is that you can't cherry pick like this. You can't, you can't pick, you can't use half of page 22 of the appendix on the loss of use, but then erase the bottom half. So how, how do you respond to that? Well, like I said, I don't believe, I believe that the court mentioned that, that the attorney said that, but that was, I don't think that was the reason why when you say mention, are you referring to what she wrote on page six? Right. She said that, that, that Prairie's council clarified that Prairie was not making a claim for loss of use. But then if you look at her opinion on the page before, and the preface to that is more over. So more over that was just a confirmation of her own understanding of what it says in the complaint. Doesn't that suggest that more over she's relying on that, that that's further support for her position here? Sure. But there, even if it is, it's not reversible error because there nor any inferences that there was any loss of use claim ever asserted. So let me ask you a hypothetical and I know it's hypothetical. So suppose at the hearing that we're talking about, Ms. Barron said, oh, this was quite an episode. The plant caught on fire. There were 10 fire trucks that came out. It took three hours to put the fire out. There was massive damage. Unfortunately, a few people were hurt. Would you still say we don't need to inquire into the facts at all? Well, your Honor, those are actual, she's stating actual. No, no, no. Why don't you focus on my hypothetical. Focus on my hypothetical. So that would be something that you would want to investigate. But in this particular instance, she's just saying they're not seeking those damages. She's the lawyer. So I would say that your scenario is a little different. That's not what happened. When you look at the transcript, there's a question that is put to Ms. Barrett by the court. So you are seeking money for damage to the Prairie State property. Answer, correct. So my question is, it may be one a degree compared with my hypothetical. But if in my hypothetical, in response to that, you say, well, look, if a lawyer said there was a fire and there were 10 trucks show up and it took three hours to put out, you probably need to undertake an inquiry. I think that's the point, as I understand it, that COIL is making here. It should have its day in court on the inquiry. Well, your Honor. Maybe they'll win. Sure. And be that as it may, the facts here are just, is that there is no occurrence alleged. So even let's say for the sake of argument that there is some allegation of these rip and tear, I'm going to call it that type of damages. If you look at the recent case of Lexington Insurance Company versus Chicago Flame Proof and what specialties, the court refutes, the Seventh Circuit refutes that these rip and tear damages are caused by an occurrence. So in this case, the the the appellant is trying to liken its own situation to the situation presented in that case. So in that case, the customer sought repair and replacement costs, including the cost of damage to surrounding materials into which lumber had been integrated. And the court, citing to several earlier decisions, held that the ripping and tearing out of the lumber was the natural and ordinary consequences of supplying the wrong lumber. Was that a summary judgment ruling? It was. I believe so. Which comes back to how can that really factual determination of occurrence be made at a 12C motion for judgment on the pleadings? I mean, well, Your Honor, I mean, if you I mean, there the procedure of having judgment on the pleadings is allowed. And here it's not it's not this isn't a new case. It's been over five years since the facts giving rise to this. The underlying claims took place. It's been three years since the underlying lawsuit was filed. They were given the opportunity to do discovery in this case. There was discovery that was undertaken, Your Honor. In the district court? Yes, there was discovery that was undertaken. Their discovery was limited because instead of trying to use it for what it was offered for, they instead asked for underwriting history and, you know, all this crazy discovery. And so the magistrate, you know, shut the discovery down and limited it to what was, you know, at issue in the. Was any discovery propounded? Was any discovery propounded to seek the factual basis for the representation that Ms. Barron made in court? Well, Your Honor, yes, because there was like exchange between the insured and the carrier before that and files were given and documents were provided. So if you look at the one email that they attach as.  Yeah, and they attach it as one of their that was one of their supplemental things. The email that they submitted was something that was provided by Federated to COIL. So the email that they submitted in one of their supplemental filings was something that was provided in discovery. So why shouldn't that have been presented to the district court? It seems like COIL was precluded from advancing its defense before the court by not being able to get some of this evidence before the court. And maybe ultimately you would win on summary judgment, but. It seems like they weren't given the chance in the first instance to present this defense. I mean, you know, you know, we don't agree. I mean, we believe that. You know, they've raised, you know, if you look at what they say, the questions are a fact at the end of their reply brief, they throw out some facts and, you know, the facts are really immaterial to the actual claims in the Prairie lawsuit for repair and replacement of defective valves. If you go to the end of their reply brief and the things that they say are question of fact, they bring up, you know, this advertising injury claim, you know, which really, I mean, the court accurately pointed out that there's no advertising injury claim at issue here. They're just, you know, throwing out something. Maybe Mr. Davis will tell us we're wrong. Maybe Mr. Davis will tell us we're wrong. I thought the whole point of the discovery was to figure out is what Ms. Barron, does what Ms. Barron represented in court to Magistrate Williams, does it have a factual basis? Is it true? Was there property damage to the plant? Well, Your Honor, that's, they can't find that out from us. That's something that they are developing below, but they've had, you know, three years to develop that and there hasn't been any facts developed. They haven't come to us with anything. I mean, this case is still going on. I have a feeling that if he, that if Mr. Davis tried to file the deposition of the plant manager or somebody else, that there would be a motion to strike that. Well, they did file the deposition and we did file a motion to strike that, but there was nothing in there. I mean, I read it, I'm suspecting that you guys read it. There's nothing in there that still doesn't support his argument. His own plant manager said, you know, I don't know if there was other... So maybe that means at the end of the day, after the facts are developed, you win. I mean, Your Honor, we believe that the situation here is that, you know, a duty to defend is based upon, you know, facts asserted in the underlying complaint. The facts asserted in the underlying complaint. Doesn't that allow, though, without, under the facts here, without an exploration of the factual record as to what they're actually seeking, doesn't that allow the underlying action complaint to be framed in a way that could preclude the duty to defend from kicking in, but then down the road still have COIL on the hook for these damages that the insurance is supposed to cover? They're not the master of the complaint here. If COIL was the master of its complaint, it would be different. And I could see where they should be held to, or it should be held to the allegations in the complaint, but they're not the master of the complaint here. So Prairie could plead around it. Well, Your Honor, that's true. They're not the master of the complaint regarding, if you look at the case law, it's the type of causes of action of alleged as opposed to the facts alleged. So in other words, if they called it something else, but it really could be something else, the case law says that they're not the master in that regard. But here there are no facts alleged to support these supposed claims. They don't say that they lost power at the facility. They don't say that they lost production at the facility. They're not seeking those damages. There are no facts to support that. You have to at least have facts to support these strategies and theories that they're throwing up against the wall. There just isn't anything there. You know, they threw an advertising injury. They threw in leaking fluid. None of that. There are no facts to support any of that. So at a minimum, you at least have to have facts to support these theories of coverage, not just that bald, you know, allegations just pulled out of whole cloth. And that's what really we have going on here. And if you look at the Amerisher Mutual versus Microplastics, another Second Circuit opinion, you'll see that, you know, it's the actual complaint, not some hypothetical version that gives rise to the duty to defend. I mean, there has to be some basis for the duty to defend. Here there isn't any basis. It's just what if this and what if that and what if this? And we're talking about five years down the road. How much has to be, Counsel, how much has to be in the pleadings? I thought we went away from factual pleadings and grant some general statements that can be supported by subsequent facts that have come out. Well, Your Honor, I mean, there is fact pleading under the Illinois state laws. This is an Illinois state complaint. But even, you know, even any facts, I mean, there are no facts. There's no allegation that the plant was shut down. They refer to some comment that it was brought back up as, you know, the basis. And that was just to install the actual original valves. So there's no allegation that they lost power. There's no allegation that they had any kind of disruption. There's no allegation that they sought damages for that. There's no allegation that anything, you know, was damaged by this, you know, the steam. We didn't really even get to the allegation of the hazardous material. But the valves aren't hazardous themselves. It's not like asbestos where you are where you're introducing a hazardous material. The hazardous material was the power and the steam itself. And that was not something that was, you know, introduced. Into the machinery. So, I mean, I just, there's nothing. I mean, here, there just is no allegation. The underlying complaint is seven pages long. It has three causes of action for breach of contract and breach of warranty. It seeks only damages for the cost of replacement and removal of the valves. And that's it. I mean, there are no allegations of other damages. There are no allegations of some unexpected or unforeseen occurrence, which is what is required by Illinois law to trigger coverage under a liability policy. I mean, this isn't a warranty of the products of coil. This is, you know, this isn't a bond. I understand your position, counsel. Thank you very much. Mr. Davis. Thank you. I don't have too much more to offer. I would say that our case, I think, is very consistent with the Lexington, Chicago flame proof case. That case focuses on the facts, not the law or the causes of action selected. So I disagree that the law is that the cases mean that the labels put on the claims or what's important. It is the facts. That case was a fraud and negligent misrepresentation case. And it involved the intentional substitution of non-certified lumber for a project. And so, of course, there wasn't an occurrence because there was no action. If there was nothing unforeseen or untoward surprising that happened, this was a intentional substitution of products. So that case really doesn't help. I do very much like the Amerisher case. And I urge the court to look at that, even though that case did not find coverage. It posits at the beginning of it a substantial number of those types of hypotheticals like Judge Scudder was going through and Judge Hamilton worked through those very effectively. And I think if you work through those, you see where our case fits. This case is not a case which just involves repair replacement. There's so much more going on here. It's just obvious. It screams from even this minimalist seven page complaint. And we're hamstrung because of where we sit. We are subject to, we're at the mercy of the drafter of this complaint. We've had discovery restricted. Yes, there was some discovery and we didn't get a lot of what we were seeking. And so, and yes, the underlying case is proceeding as Judge St-Ives asked. And we are getting answers to these questions. In fact, the theory of the case seems to be changing that it was more of a negligence case. It's failure to provide accurate information. So there's a lot that could be said. But the point is at the beginning, when this was decided, there was nothing on the table for the district court really to run with. And there really wasn't much analysis in her opinion as a result. And it's just unfair to us at this stage. We had a right to get into extrinsic evidence. We had a right to consider matters outside the pleadings and a reasonable opportunity to respond to the situation we were facing. And I do think we were hampered in that regard. And so I will stop there. I appreciate the panel's attention and excellent questions. Thank you. Thank you. Thanks to both counsel and the case will be taken under advisement.